* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over this case, and all parties are subject to and bound by the Workers' Compensation Act. *Page 2 
2. The Industrial Commission forms filed in this case are admissible, without further authentication.
3. On the date of the accident, an employer/employee relationship existed between the parties; defendant was insured by Ace-USA on the date of the accident and Ace-USA is the carrier on the risk.
4. The medical records of the treating physicians are admissible without further authentication. These include the following:
 a. Carolina Hand Center;
 b. Stanley Orthopaedic Hand Surgery Clinic;
 c. Stanley Memorial Hospital;
 d. Dr. Stephen Shaffer; and
 e. Intracorp.
5. Plaintiff suffered a compensable injury on June 10, 2000. The claim was accepted as compensable under a Form 60.
6. Plaintiff was paid a period of total disability and in addition, pursuant to a Form 21 agreement and received payment of $9,495.20 for 5% disability ratings to each hand. The Form 21 agreement was approved by the Industrial Commission on July 13, 2001.
7. Plaintiff was paid weekly benefits based on an average weekly wage of $712.00, which yielded a compensation rate of $474.76 per week.
8. Plaintiff was overpaid benefits for temporary total disability benefits from May 13, 2002 through August 1, 2002, in the amount of $5,358.00. *Page 3 
9. At a mediated settlement conference held on November 6, 2003, plaintiff agreed to repay $75.00 per month regarding the overpayment but, to date, has only made 13 payments, totaling $975.00.
10. The issues for determination before the deputy commissioner were:
 a. Whether plaintiff has suffered a change of condition pursuant to N.C. Gen. Stat. § 97-47?
 b. If so, to what additional benefits is plaintiff entitled?
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 57 years old. Plaintiff completed the seventh grade and at the time of the hearing before the deputy commissioner did not have a GED.
2. On August 22, 2000, plaintiff was diagnosed with severe carpal tunnel syndrome and Guyon's canal syndrome on the left side and severe carpal tunnel syndrome on the right side. On September 26, 2000, plaintiff underwent surgery performed by Dr. Warren Burrows, namely, a right carpal tunnel release. On October 24, 2000, plaintiff had a left carpal tunnel release surgery performed by Dr. Burrows.
3. On January 18, 2001, Dr. Burrows assigned plaintiff a 5% permanent partial impairment rating to his right hand and a 5% permanent partial impairment rating to his left hand. On that date, plaintiff was released and given permanent restrictions of no forceful *Page 4 
gripping or pinching activities, or use of vibratory or impact tools, and lifting restrictions for each hand of 20 — 25 pounds.
4. On or about April 11, 2001, the parties entered into a Form 21 agreement for compensation for disability by which defendants agreed to pay for the 5% permanent partial disability ratings for each hand. At that time plaintiff was not represented by counsel. The Form 21 was approved by the Industrial Commission on July 13, 2001, and the benefits were paid to plaintiff in a lump sum by check issued on September 14, 2001.
5. Plaintiff returned to Dr. Burrows in May 2001 with complaints of strain to both hands with wrist pain and swelling, due to being required at work to lift tires weighing up to 50 pounds. Dr. Burrows returned plaintiff to light duty for two weeks with a 10 pound lifting restriction for the left hand and a 15 to 20 pound restriction of lifting and carrying with both hands.
6. In August 2001, plaintiff presented to Dr. Burrows with complaints of increasing numbness in his hands and pain on the undersurface of his wrist. Plaintiff related to Dr. Burrows that he was required at work to lift tires weighing up to 50 pounds, picking each tire up approximately four times. Plaintiff processed between 300 and 400 tires per day. Dr. Burrows again placed plaintiff on light duty restrictions.
7. On September 17, 2001, plaintiff reported doing better after being returned to light duty. At that time, plaintiff was working in the painting department for defendant. Dr. Burrows referred plaintiff for a Functional Capacity Evaluation (FCE) because plaintiff's job still required some lifting,
8. On September 27, 2001, plaintiff underwent an FCE that demonstrated he was able to lift 21 — 50 pounds occasionally, 11 — 25 pounds frequently, and 1-10 pounds constantly. *Page 5 
The FCE further indicated that plaintiff was able to carry 51-100 pounds occasionally, 26-50 pounds frequently, and 11 — 20 pounds constantly.
9. On October 1, 2001, Dr. Burrows gave plaintiff permanent restrictions in accordance with the findings of the FCE. On October 9, 2001, in light of plaintiff's new restrictions, defendant determined that it could no longer provide him with modified employment and terminated his employment. Defendants voluntarily began paying temporary total disability to plaintiff at that time.
10. On or about March 28, 2002, defendants engaged Nancy Stewart, a vocational rehabilitation professional employed by Intracorp, to assist plaintiff and his brother, Biff Eudy, with vocational rehabilitation services. Ms. Stewart met with plaintiff on one occasion, jointly with his brother at plaintiff counsel's law office in Charlotte on March 28, 2002.
11. Plaintiff subsequently found employment through his own job search and on May 13, 2002, began working for Homanit driving a forklift and earning $9.45 per hour with overtime. On March 13, 2003, plaintiff was terminated from Homanit as a result of excessive unexcused absences and tardiness.
12. Plaintiff obtained a position with the City of Albemarle as a water tester, beginning on September 8, 2003, earning $10.21 per hour for 40 hours per week. There is a 50-pound lifting requirement for the water treatment plant operator position. Plaintiff never gave any indication that he could not lift the 50-pound bags, nor did plaintiff fail to operate the equipment appropriately or have any failures with his ability to handle the job tasks.
13. Plaintiff was required to pass a water plant operator state certification exam in order to keep the job with the City Water Department. The City provided a week for review for the exam, which included both algebra and geometry word problems. Plaintiff did not pass the *Page 6 
examination; therefore, the City was required to terminate his employment effective September 24, 2004.
14. There is no evidence that plaintiff's failure to maintain his employment with the Water Department was in any way due to problems with his hands or any physical inability to perform the job duties required by the position of water plant operator.
15. While plaintiff suffers from Type 2 diabetes, there is no medical evidence that his diabetic condition physically inhibits his ability to work.
16. Beginning on September 27, 2004 and continuing for approximately one year, plaintiff made over 300 job search contacts. He eventually stopped looking because he felt he would not be able to get a job he could physically perform. Plaintiff's age, lack of education and restrictions from the compensable injury combined to make him non-employable in jobs for which he was otherwise qualified.
17. Vocational rehabilitation professional Nancy Stewart developed a labor market survey that identified 17 potential jobs that fit within plaintiff's profile of sedentary, light, and medium capacity jobs in his locality. Ms. Stewart acknowledged that individuals such as plaintiff who have limited education, physical restrictions, and are over 55 years of age are very difficult to place in jobs in the Stanly County area. Beyond the actual survey, defendants did not bring forth any evidence that plaintiff could actually obtain any specific job and there is no evidence in the record of a job offer at any time since September 24, 2004.
18. Plaintiff has been unable after a reasonable and diligent job search to earn wages at any other employment since September 24, 2004. The undersigned find as fact that it would be futile for plaintiff to continue to look for a job given his age, geographic location, educational *Page 7 
level, work history and the restrictions on lifting and carrying assigned by Dr. Burrows as a result of his compensable bilateral carpal tunnel syndrome.
19. Plaintiff has shown by the greater weight of the evidence that he has suffered a substantial change of his earning capacity due to the termination of his employment with the City of Albemarle on September 24, 2004. However, the undersigned do not find that plaintiff is permanently and totally disabled. Plaintiff's current inability to obtain employment appears to be primarily based upon his lack of education. Accordingly, should plaintiff obtain his GED, his ability to obtain employment should increase.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. A change of condition can consist of either (1) a change in the claimant's physical condition that impacts his earning capacity, (2) a change in the claimant's earning capacity even though claimant's physical condition remains unchanged, or (3) a change in the degree of disability even though claimant's physical condition remains unchanged.Blair v. American Television Communications Corp., 124 N.C. App. 420,423, 477 S.E.2d 190, 192 (1996). In all instances, the party seeking modification of an award due to a change of condition has the burden to prove that the new condition is directly related to the original compensable injury that is the basis of the award the party seeks to modify. Id.
2. In the instant case, plaintiff's change in earning capacity is due to his lack of education, evidenced by his failure to pass the water treatment operator test. His inability to find subsequent employment is due to a number of factors, including the restrictions resulting from his compensable injury, his lack of education and his age. Accordingly, the undersigned *Page 8 
conclude as a matter of law that plaintiff has shown that his current unemployment is due, at least in part, to the original compensable injury that is the basis of the award plaintiff seeks to modify.Id.
3. Plaintiff has demonstrated a change of condition as defined under the North Carolina Workers' Compensation Act, requiring defendants to reinstate temporary total disability compensation in the weekly amount of $474.76, beginning on September 25, 2004 and continuing until further Order of the Commission. N.C. Gen. Stat. §§ 97-47; 97-29.
4. Plaintiff is not permanently and totally disabled. N.C. Gen. Stat. § 97-2(9); Rusell v. Lowes Product Distr., 108 N.C.App. 762,425 S.E.2d 454 (1993). Should plaintiff receive further education, either by obtaining a GED or by attending adult education classes, his opportunities for employment will increase greatly. Accordingly, the plaintiff shall enroll in a program to achieve one of these ends.
5. Defendants are entitled to a credit for the unemployment benefits plaintiff received after September 24, 2004, in the amount of $3,842.00 and a credit for the remaining temporary total disability overpayment in the amount of $4,383.00. N.C. Gen. Stat. § 97-42.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved and to a credit owed to defendants, defendants shall pay temporary total disability compensation to plaintiff at the rate of $474.76 per week for the period beginning on September 25, 2004 and continuing until further *Page 9 
Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum. N.C. Gen. Stat. § 97-29.
2. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from the lump sum due plaintiff and paid directly to counsel. Thereafter, every fourth payment shall be paid directly to plaintiff's counsel.
3. Defendants are entitled to a credit for the unemployment benefits plaintiff received after September 24, 2004, in the amount of $3,842.00 and a credit for the remaining temporary total disability overpayment in the amount of $4,383.00. N.C. Gen. Stat. § 97-42.1.
4. The parties shall notify the undersigned of the program entered into by plaintiff to obtain his GED or, in the alternative, the adult education classes being taken by plaintiff and the projected time for completion of whichever program plaintiff begins. Should plaintiff fail to comply with this Order or fail to complete the program, defendants may submit a Form 24 application to suspend benefits. Upon completion of the educational program, the parties shall engage a vocational rehabilitation expert and attempt to find plaintiff suitable employment.
5. Defendants shall pay the costs.
This the 11th day of April 2007.
 S/______________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ DANNY L. MCDONALD *Page 10 
COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1